# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:09-cv-217-RJC

| | |
|---|---|
| DARRELL GAINES, | ) |
| Plaintiff, | ) |
| v. | ) ORDER |
| JUSTIN CLINARD, | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment. (Doc. No. 114). For the reasons that follow, the Court finds that Defendant's Motion for Summary Judgment should be **GRANTED** and this action should be **DISMISSED** with prejudice.

## I. BACKGROUND

### A. Procedural Background

On April 18, 2011, pro se plaintiff Darrell Gaines ("Plaintiff") filed an amended complaint, pursuant to 42 U.S.C. § 1983, alleging that eight Asheville Police Department ("APD") officers violated his Fourth Amendment right to be free from unlawful seizure when they either arrested him or issued citations to him for being present on Asheville Housing Authority ("AHA") property. (Doc. No. 61-1). On November 28, 2011, the defendants filed a Rule 12(b)(6) Motion to Dismiss for failure to state a claim upon which relief can be granted. (Doc. No. 76). The Court granted the defendants' motion in part and denied it in part by entering an order dismissing all named defendants except for Justin Clinard ("Defendant" or "Clinard").[1]

---

[1] Plaintiff alleged sufficient facts to survive a Rule 12(b)(6) Motion to Dismiss as to Defendant

(Doc. No. 94).

On November 6, 2012, Clinard filed an answer to Plaintiff's amended complaint wherein he asserted the affirmative defenses of Qualified Immunity and Public Officer Immunity. (Doc. No. 105). The Court entered a discovery scheduling order on February 22, 2013, (Doc. No. 107), and following the close of discovery, Clinard filed the instant Motion for Summary Judgment along with a supporting memorandum, affidavits, and exhibits on June 17, 2013. (Doc. Nos. 114-18). The Court entered an order notifying Plaintiff of his obligation to respond to the evidence presented by Clinard,[2] and Plaintiff filed his response in opposition to Clinard's Motion for Summary Judgment on July 10, 2013. (Doc. No. 122). Defendant's pending Motion for Summary Judgment is ripe for disposition.

B. Factual Background

From the record in this matter, the Court finds the following facts are undisputed. On October 17, 2006, Plaintiff was on the property of the AHA. (Doc. No. 122). Clinard and his partner Officer Dotson ("Dotson") responded to a call from dispatch regarding a shot fired on the property. (Doc. No. 118 at 2, 4). Clinard and Dotson thereafter entered onto the property and encountered Plaintiff whom they later identified as Darrell Gaines. (Id. at 2). Clinard learned through dispatch that an individual named Darrell Gaines was banned from AHA property. (Doc. No. 115 at 2). Clinard then charged and arrested Plaintiff for Second Degree Trespass for being on AHA property and for Resisting a Public Officer. (Id.). Both charges were later

---

Clinard. See (Doc. No. 94). At the summary judgment stage, however, the Court considers all of the evidence and affidavits and finds based on the evidence presented, Defendant Clinard should be afforded the protection of qualified immunity.
[2] The Court notified Plaintiff of his obligation to respond to Clinard's Motion for Summary Judgment pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

dismissed by the Buncombe County District Attorney. (Doc. No. 61-1 at 21). The parties disagree about whether Plaintiff resisted arrest and whether Clinard had actual knowledge that Plaintiff was not banned from AHA property at the time he was arrested.

    1.    <u>Clinard's Evidence</u>

According to the evidence presented by Clinard, he and Dotson responded to the AHA property after receiving a report from dispatch that someone had discharged a gun on the property. (Doc. No. 115 at 1-2). Upon arriving at the AHA property, Clinard observed several individuals standing together on the property. As he approached the individuals he observed one of them, whom he later identified as Plaintiff Darrell Gaines, wearing a leather jacket with one hand in his pocket. Clinard ordered Plaintiff to remove his hand from the pocket. Plaintiff refused, and then fled on foot. Clinard recalls that either he or Dotson ordered Plaintiff to stop, but he continued to flee. Clinard gave chase, and was finally able to wrestle Plaintiff to the ground on his fourth attempt after Plaintiff had avoided his grasp on three previous occasions. (<u>Id.</u>).

Clinard handcuffed Plaintiff to prevent him from fleeing. (<u>Id.</u>). Then Clinard contacted dispatch and obtained information on Plaintiff. Clinard learned from communication with dispatch that a man by the name of Darrell Gaines was banned from public housing ("BPH") property. Based on the knowledge that an individual named Darrell Gaines was on the BPH list as well as Plaintiff's attempt to evade arrest, Clinard charged and arrested Plaintiff for Second Degree Trespass and Resisting a Public Officer. Clinard testifies that he would not have arrested Plaintiff for Second Degree Trespass "unless he had a BPH alert." (<u>Id.</u>).

    2.    <u>Glass Affidavit</u>

Kathy Glass is employed by Buncombe County and works as a systems analyst for the Criminal Justice Information System (CJIS). (Doc. No. 116). The CJIS system is utilized by both the city of Asheville and Buncombe County to provide information about individuals, suspects, or arrestees. The CJIS obtains this information from the Records Management System (RMS). This information may be accessed by officers through dispatch or a remote terminal in a squad car. When an APD officer runs a report on an individual, a BPH alert may be displayed which informs the officer that the person may not lawfully be on public housing property. According to Glass's review of the RMS records, an individual named Darrell Gaines was assigned the number 7891 within the system. The records show, and Ms. Glass testifies, that this individual was placed on the BPH list, and thus was banned from being on AHA property from about March 25, 2005, until January 1, 2007. (Id.).

3. Plaintiff's Arguments

The AHA maintains a list of persons that have been banned from being present on AHA property because they have been charged or convicted of certain crimes. See (Doc. No. 61-1 at 18). According to an attachment that Plaintiff included with his amended complaint, he was on the AHA's banned list from June 2, 2007, to June 2, 2010. (Id.). He contends that on the date that Defendant arrested him, October 17, 2006, he was not on the banned list, and therefore any such police action violated his constitutional rights. See (Id.). However, Plaintiff fails to provide any evidence to support this argument. In both his initial and amended complaints, Plaintiff alleges that:

> In a chain of conspiracy, Justin Clinard on or about 10/17/06 and in a false manner, with reckless disregard to the truth and with conscious knowledge of his falsity, . . . pulled me over, [and] told me I was barred from all Properties managed by the Housing Authority. I was handcuffed, frisked and searched,

4

>arrested for trespassing and I was transported to the Buncombe County Jail. Processed in booking place in Jail for trespassing. Went to Court and the District Attorney dismissed the charges . . .

(Doc. No. 61-1 at 4).

Plaintiff disputes that he could have been put on the BPH list in March 2005, because he was incarcerated as a State prisoner in North Carolina; therefore, he maintains that he was not on the BPH list on October 17, 2006, the date of his arrest. (Doc. No. 122 at 8, 11). According to a North Carolina Department of Corrections offender information sheet that Plaintiff attached to his response, he was incarcerated from on or about October 14, 1998, until his release on April 30, 2006. (Id. at 30). Plaintiff claims that Clinard knew that Plaintiff was not on the BPH list because he told Clinard this and showed Clinard a letter from the AHA proving this before he was arrested. (Id. at 7).

## II. STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). The party moving for summary judgment bears the burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If this initial burden is met, the opposing party may not rest on the mere allegations in the complaint. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Rather, the opposing party "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475

U.S. at 587. Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, summary judgment is appropriate. Anderson, 477 U.S. at 248-49.

## III. DISCUSSION

In his Motion for Summary Judgment, Clinard contends that there is no genuine issue of material fact because he had probable cause to arrest Plaintiff for Resisting a Public Officer as well as probable cause to arrest him for Second Degree Trespass. See (Doc. No. 117). Clinard therefore argues that he should be entitled to qualified immunity and the claim for false arrest should be dismissed. (Doc. No. 114).

In response to Clinard's Motion for Summary Judgment, Plaintiff contends that Clinard arrested the wrong Darrell Gaines, and that Plaintiff showed Clinard a letter from the AHA that demonstrated that he was not banned from AHA property. (Doc. No. 122 at 7). Plaintiff argues that despite this purported show of proof, Clinard carried through with the arrest for Second Degree Trespass and Resisting a Public Officer and then transported Plaintiff to the Buncombe County jail. (Doc. No. 122-1).

Law enforcement officers enjoy the protection of qualified immunity from suits under § 1983 "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987). The application of qualified immunity is appropriate "if a reasonable officer possessing the same information could have believed that his conduct [in arresting an individual] was lawful." Slattery v. Rizzo, 939 F.2d 213, 216 (4th Cir. 1991). A court must first "identify the specific right that the plaintiff asserts was infringed by the challenged conduct." Wilson v. Lane, 141 F.3d 111, 114 (4th Cir. 1998) (en banc), aff'd, 526 U.S. 603 (1999). Next, two questions must

be considered in determining whether qualified immunity applies. First, the Court determines "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right." Pearson v. Callahan, 555 U.S. 223, 231-32 (2009). Second, the Court considers "whether the right at issue was clearly established at the time of defendant's alleged misconduct." Id. In determining the existence of qualified immunity, the Court is not bound to resolve either of these two questions first. Id. at 236; see also Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012). A defendant will be entitled to the protection of qualified immunity if the answer to either of the two questions posed above is "no." Reichle, 132 S. Ct. at 2093.

Plaintiff contends that Officer Clinard violated his Fourth Amendment right to be free from unreasonable seizure.[3] (Doc. No. 61-1). The Fourth Amendment guarantees "[t]he right of the people to be secure . . . against unreasonable searches and seizures." U.S. Const. amend. IV. An arrest is no doubt a seizure of the person; however, it is reasonable if supported by probable cause. Wilson v. Kittoe, 337 F.3d 392, 398 (4th Cir. 2003). In determining whether probable cause existed, the Court must "examine the totality of the circumstances known to the officer at the time of the arrest." Taylor v. Waters, 81 F.3d 429, 434 (4th Cir. 1996). "[T]he question is not whether there actually was probable cause . . . but whether an objective law officer could reasonably have believed probable cause to exist." Gomez v. Atkins, 296 F.3d 253, 261-62 (4th Cir. 2002). "First, the determination and existence of probable cause is a 'practical, nontechnical conception,' and it involves 'factual and practical considerations of everyday life on which

---

[3] To the extent Plaintiff contends that his rights as protected by the Fourteenth Amendment were violated, the Court finds that this claim must fail. In order to state an actionable claim under the Fourteenth Amendment, Plaintiff would have to show that Clinard's conduct in arresting him "shocks the conscience." County of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998). There is no such showing in this case.

7

reasonable and prudent men, not legal technicians, act.'" Id. at 262 (quoting Brinegar v. United States, 338 U.S. 160, 175-76 (1949)). "Furthermore, in determining whether probable cause exists, the evidence 'must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of the law enforcement.'" Id. (quoting Illinois v. Gates, 462 U.S. 213, 232 (1983)). "Probable cause exists when the facts and circumstances within an officer's knowledge—or of which he possesses reasonably trustworthy information—are sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed." Wadkins v. Arnold, 214 F.3d 535, 539 (4th Cir. 2000).

Plaintiff does not dispute that he was arrested for Second Degree Trespass and for Resisting a Public Officer on October 17, 2006. See (Doc. No. 122). The evidence shows that on October 17, 2006, Clinard responded to a dispatch call that a gunshot was heard on AHA property. Upon arriving on the property, Clinard confronted Plaintiff and instructed him to take his hand out of his pocket. Plaintiff failed to comply and proceeded to flee. After chasing Plaintiff and detaining him, Clinard ran a records check. The records check indicated that a man named Darrell Gaines was on the BPH list. Plaintiff does not dispute that Clinard ran a records check and that a man with the name Darrell Gaines was on the BPH list on October 17, 2006. (Id.). Plaintiff only contends that he is not the only Darrell Gaines in Asheville and that Clinard arrested the wrong Darrell Gaines. (Id.). Based upon his knowledge that Plaintiff fled from officers and that an individual with Plaintiff's same name was on the BPH list, Clinard arrested Plaintiff for Second Degree Trespass and for Resisting a Public Officer. This information, "standing alone and uncorroborated," was sufficient to establish probable cause. United States v. Patterson, 150 F.3d 382, 385-86 (4th Cir. 1998).

While Plaintiff's account of the arrest differs from Clinard's account, mere factual disputes do not preclude granting summary judgment on the defense of qualified immunity when there is no genuine issue of fact regarding the reasonableness of the officers' perception. See Gooden v. Howard Cnty., 954 F.2d 960, 965-66 (4th Cir. 1992). If a flat denial by a suspect could serve to support a claim in a § 1983 proceeding in every case, then there would be no end to such litigation. Without more than a mere self-serving denial, Plaintiff has failed to demonstrate that he did not resist arrest or that Clinard knowingly arrested the wrong person for Second Degree Trespass. Even if Plaintiff had been able to demonstrably prove that Clinard did not have probable cause to arrest him for Resisting a Public Officer, Clinard clearly had probable cause to arrest him for Second Degree Trespass. Therefore, Clinard would still be entitled to the defense of qualified immunity.

## V. CONCLUSION

Any reasonable officer possessing the same information would have believed that his or her conduct in arresting Plaintiff was lawful. Therefore, the Court finds that Plaintiff has not alleged facts that make out a violation of a constitutional right and that Clinard acted reasonably in response to the information he received. Clinard had probable cause to arrest Plaintiff for Second Degree Trespass or Resisting a Public Officer, despite his alleged protestations of innocence at the scene. Clinard did not violate Plaintiff's clearly established right to be free from seizure. Accordingly, the Court concludes that there is no genuine dispute as to any material fact and that qualified immunity applies in this case. Defendant's Motion for Summary Judgment is **GRANTED**.

**IT IS, THEREFORE, ORDERED** that:

1. Defendant's Motion for Summary Judgment, (Doc. No. 114), is **GRANTED**, and this civil action is **DISMISSED** with prejudice.

2. Plaintiff's Motion for Reconsideration, (Doc. No. 113), of the Court's Order denying Defendant's Motion for a Protective Order, (Doc. No. 111), is **DENIED**.

3. Plaintiff's Motion for an Order Compelling Discovery, (Doc. No. 119), is **DENIED**.

4. Plaintiff's Motion for a Jury Trial, (Doc. No. 123), is **DENIED**.

Robert J. Conrad, Jr.
United States District Judge